## JOHN NAGLE v. MOODY & JEMISON.

### (Case No. 4144.)

1. LIMITATION — COMMISSION MERCHANT.— Mutual and continuing dealings existed between commission merchants in Galveston, and a cotton buyer in the interior, under an agreement by which cotton was to be shipped to the commission merchants, who were to accept drafts drawn against the cotton. *Held* —

    1. That the statute of limitations would not begin to run in favor of the commission merchants for the proceeds of the cotton until after an account of sales had been rendered by them, or until after a reasonable time within which the same should have been rendered, or until after an open or implied conversion of the proceeds.

    2. Limitation would not run in favor of the buyer until the cotton had been sold or otherwise accounted for, or until after a reasonable time within which it could have been sold or accounted for.

    3. That the commission merchants had charged interest from dates of payment of the buyer's drafts, and had credited him with interest from dates of sales of cotton, should not have the effect to make the dates of sale the accrual of the cause of action, any more than would their agreement that interest would be charged before maturity.

APPEAL from Travis. Tried below before the Hon. E. B. Turner.

Suit by commission merchants Moody & Jemison, against John Nagle, to recover a balance of $2,079.45 alleged to be due them for moneys advanced upon cotton shipments by him to them during the cotton season of 1876–77. The action is based upon an account styled an "account current," attached to and made a part of the petition, and upon certain bills of exchange described in the petition as drawn by the defendant on the plaintiffs and by them accepted and paid. The dates of payment and the amount of each draft correspond with the date and amount of each item of advance charged in the account. The first item of advance is dated on the 11th day of September, 1876, and the last on the 22d day of January, 1877. The items of credit or payment extend from the 6th of October, 1876, to the 19th of October, 1877, inclusive.

The original petition, filed September 30, 1879, was based wholly on the account. The amended petition, filed January 6, 1880, and upon which the case was tried, declared in addition upon the paid drafts, with respect to which plaintiffs claimed to be accommodation acceptors.

The defenses were: a general demurrer, special demurrer, special plea of the statute of limitations of two years, and a general denial.

The petition alleges that the advances were made to defendant pursuant to an agreement between him and plaintiffs; and that they were not to mature until all cotton shipped plaintiffs by defendant should be sold. The evidence shows that each item of advance was charged when made, and interest computed from date of advance. That each item of advance had been standing more than two years prior to the filing of the petition. The first advance was September 11, 1876; the last, January 22, 1877. Advances were made upon cotton shipped by defendant to plaintiffs. The advances were realized on drafts drawn by defendant on plaintiffs and by them accepted and paid. The drafts were drawn against cotton shipped.

There was no proof of an understanding between the plaintiffs and defendant as to when the advances should mature. E. S. Jemison, one of the plaintiffs, was permitted to state, over the objection of defendant, " that the statement was a conclusion and the opinion only of the witness;" " that the claim against defendant became due at the date of the last sale of cotton on the 19th of October, 1877."

Judgment for plaintiffs for $2,109.50, interest and costs.

*Wooldridge & Fisher* for appellant.

I. Where the proof fails to show an understanding between the parties as to when advances made by one to the other shall mature, they become due from the date of each advance, and advances of longer standing than two years will be barred, unless the transaction fall within the protection of the exception in favor of merchant and merchant. R. S., art. 3203; May *v.* Pollard, 28 Tex., 678; Lowe *v.* Dowbarn, 26 Tex., 509; Guichard *v.* Superville, 11 Tex., 522; Judd *v.* Sampson & Co.. 13 Tex., 19; 3 Parsons on Contracts, 6th ed., 86, note O; Angell on Limitations, 6th ed., 161.

II. Unless the account be mutual and concern the business or trade of merchandise, charges on one side, and credits or payments on the other, will not bring it within the exception in favor of merchant and merchant. Guichard *v.* Superville, 11 Tex., 522; Angell on Limitations, 6th ed., sec. 149.

III. The drawee of a bill who accepts and pays the same for the accommodation of the drawer, may maintain his action against the drawer for money had and received, of which the bill is an item of evidence to show the date and amount of the payment; but he cannot sue upon the bill. Stark *v.* Alford, 49 Tex., 276, 277; Planters' Bank *v.* Douglas, 2 Head (Tenn.), 699; Bell *v.* Townsend, 7 La., 95; Bank, etc., *v.* Cameron, 7 Barb., 143; 1 Daniell Neg. Inst., 2d ed., 426; 2 Daniell Neg. Inst., 220, 244–45.

IV. Where, pursuant to an agreement that money shall be advanced on cotton shipped, money is advanced on drafts

Opinion of the court.

drawn against cotton or other security in the hands of the drawee, the drawee who accepts and pays the same is not an accommodation acceptor; and in a suit against the drawer by the drawee, the contract made, and not the contract stated in the bill, must control in applying the bar of the statute.

*John B. Rector* for appellees.

I. Where money is advanced by a factor or commission merchant on cotton in store, the cotton is the primary fund for the discharge of the sum advanced, and limitation does not run against such a debt until the cotton is disposed of. Grimes *et al. v.* Hagood, 27 Tex., 694; Grimes *v.* Hagood, 19 Tex., 247.

II. The action of an accommodation acceptor who has paid the bill, is grounded upon a contract in writing, which is not barred by the statute of limitations until the lapse of four years. The last draft drawn by appellant against appellees was on January 22, 1877. This draft was for $7,300, and was drawn against a shipment of one hundred and twenty-seven bales of cotton. This draft was accepted and paid by appellees. At the time this draft was drawn and paid, appellees had in their hands about one thousand bales of cotton, the property of appellant, which they were still holding. All the cotton of appellant was sold by appellees and placed to his credit, after which he was indebted to them $2,079.45. Sublitt *v.* Mc-Kinney, 19 Tex., 439; 2 Parsons on Notes and Bills, 460.

BONNER, ASSOCIATE JUSTICE.—The controlling question in this case is this: Did the statute of limitations of two years, pleaded by defendant Nagle, commence to run from the dates of the payment by Moody & Jemison of the drafts drawn on them by him, or from the dates of the last sale made by Moody & Jemison of the cotton consigned them by Nagle to meet these drafts?

It is apparent from the testimony that the dealings between the parties were mutual and continuing in their character;

that Nagle was to ship cotton to Moody & Jemison, and that the latter were to accept his drafts drawn against the cotton.

Evidently the statute of limitations would not have commenced to run in favor of Moody & Jemison for the proceeds of the cotton until after an account of sales had been rendered by them, or after a reasonable time within which the same should have been rendered, or until there had been a conversion by them of these proceeds, either openly or impliedly by law. Fulkerson *v.* White, 22 Tex., 674.

On the other hand, the cotton was the primary fund upon which Moody & Jemison not only had the right to rely for the repayment for advances made upon the same, but which Nagle could compel them to exhaust before he could be called upon to pay otherwise, these advances, made through his drafts drawn upon the faith of this cotton, and to meet which it was consigned to Moody & Jemison. Grimes *v.* Hagood, 27 Tex., 693.

Until the cotton had been sold or otherwise accounted for, the balance due from the one to the other, and which in this case is the true cause of action, could not have been ascertained, and hence the statute would not have commenced to run prior to that date, or not sooner than a reasonable time within which it could have been thus sold or accounted for.

The last sale being within less than two years before the institution of the suit, the bar of the statute had not intervened.

That Moody & Jemison had charged Nagle with interest from dates of payment of his drafts, and had credited him with interest from dates of sales of cotton, should not, under the circumstances of this case, have the effect to make these dates the accrual of the cause of action, any more than would other agreements, either express or implied, that interest would be charged before maturity. It was a mere incident to the course of dealing between the parties, and was a fair and reasonable method to keep the accounts, so that exact justice could be done to both.

AFFIRMED.

[Opinion delivered April 30, 1880.]