**N. E. GUTHRIE, Jr., Petitioner,**

**v.**

**NATIONAL HOMES CORPORATION,**
Respondent.

No. A–10722.

Supreme Court of Texas.

July 28, 1965.

Dissenting Opinion Oct. 6, 1965.

Short & Smith, Wichita Falls, for petitioner.

Fillmore, Schaeffer & Fillmore, Wichita Falls, for respondent.

POPE, Justice.

National Homes Corporation sued N. E. Guthrie, Jr. and John D. Crow and recovered judgment upon a jury verdict against both for $780.00, owing upon what it alleged was a negotiable promissory note. The Court of Civil Appeals affirmed. 387 S.W.2d 158. Guthrie alone has appealed and he has done so without bringing forward a statement of facts. He urges that he is not liable on a negotiable instrument on which his name nowhere appears, and also that the note contains a variance between the figures and the unambiguous written words that state the amount payable, in which case the courts below should have given controlling effect to the written words. It is our opinion that the instrument sued upon was not a negotiable instrument, and Guthrie is bound by the jury finding that he ratified it. We sustain Guthrie's contention that the unambiguous written words control the figures.

The instrument sued upon is as follows:

"$5780.00      Electra      Texas      3/8      1962

"Ninety (90) Days after date for Value Received I Promise To Pay to the Order of NATIONAL HOMES CORPORATION Five Thousand Eighty and 00/100 Dollars at Earl Avenue at Wallace, Lafayette, Indiana

It is hereby understood that $1000. overpayments will be made on future house deliveries until this obligation is paid.

With Interest at 6.5% per annum after date. All parties to this note, including endorsers and guarantors thereof, hereby waive presentment and demand for payment, protest, and notice of dishonor.

No. _____ Due _____ /s/ John D. Crow Crow Construction Co."

---

■ The instrument is non-negotiable. These words were written in longhand on the face of the note, "It is hereby understood that $1000. (sic) overpayments will be made on future house deliveries until this obligation is paid." Goldman v. Blum and Heidenheimer Bros., 58 Tex. 630 (1883) says: "* * * though the agreement or written instrument may have to some extent the form of a promissory note, and may use in its body the conventional terms that ordinarily invest such instruments with the character of negotiability, but if, by a stipulation in the body of the instrument, these elements which give it negotiability are limited and qualified, the negotiability of the instrument is destroyed * * *." See also, Martin v. Shumatte & Matthews, 62 Tex. 188 (1884). The additional terms written into the note burden it with the conditions of an extrinsic agreement and render it non-negotiable. Lane Co. v. Crum, Tex. Com.App., 291 S.W. 1084 (1927); Texas Land & Cattle Co. v. Carroll & Iler, 63 Tex. 48 (1885).

■ Parol evidence was properly admitted to prove that Guthrie ratified Crow's execution of the note. Texas Land & Cattle Co. v. Carroll & Iler, supra; Grimes v. Hagood, 27 Tex. 693 (1864). National Homes Corporation, the payee, obtained a jury finding that Guthrie ratified the note and ratification is ordinarily a jury issue. Binford v. Snyder, 144 Tex. 134, 189 S.W. 2d 471 (1945). In the absence of a statement of facts, we must presume that the evidence supports the finding. Lane v. Fair Stores, 150 Tex. 566, 243 S.W.2d 683 (1951). National Homes Corporation, therefore, proved that Guthrie was liable upon the non-negotiable note.

■ The trial court admitted parol evidence concerning the agreement between National Homes Corporation and Crow with respect to the amount payable. The jury found that the principal amount they agreed upon was $5780 as evidenced by the figures instead of $5080 as evidenced by the written words in the note. The jury also found that there was an unpaid balance of $780. In other words $5000 had been paid on the note. Guthrie contends, however, that the written words "Five Thousand Eighty and 00/100 * * * Dollars" are unambiguous and that they prevail over the figures as a matter of law. That is the rule applicable to negotiable instruments. Section 17(4), Article 5932, Vernon's Ann.Tex. Civ.St.; 11 Am.Jur.2d, Bills and Notes, § 158. It is our opinion that the reasons for the rule are sound and that the same rule applies and should apply to non-negotiable instruments. State v. Collier, 160 Tenn. 403, 23 S.W.2d 897, 901 (1930); Duvall v. Clark, 158 S.W.2d 565 (Tex.Civ.App.1941, writ ref. w. o. m.); Wallace v. Cook, 190 Ky. 262, 227 S.W. 279, 281 (1921); Romine v. Haag, 178 S.W. 147 (Mo.1915); 17A

C.J.S. Contracts § 311. When there is a variance between unambiguous written words and figures the written words control, and the trial court erred in giving judgment based upon the figures. The amount payable was therefore "Five Thousand Eighty and 00/100 * * * Dollars" and according to the jury $5,000 has been paid. National Homes Corporation should have judgment for only eighty dollars.

The judgments of the trial court and the Court of Civil Appeals are accordingly reformed so that National Homes Corporation shall have judgment for the sum of eighty dollars. Costs are adjudged against the National Homes Corporation.

GRIFFIN, Justice (dissenting).

I disagree with the majority opinion in the following particulars:

The majority has held the instrument in question to be nonnegotiable. I believe that this determination was unnecessary for the proper disposition of the case because the rights of the parties involved do not hinge on negotiability of the instrument.

The cause of action hinges on whether or not Guthrie ratified Crow's action in making this instrument and thereby became bound as the Maker thereof. In the absence of a statement of facts it must be presumed that sufficient evidence was introduced to support the jury's finding that Guthrie did so ratify Crow's action in making the note. Schweizer v. Adcock, 145 Tex. 64, 194 S.W.2d 549 (1946); Lane v. Fair Stores, Inc., 150 Tex. 566, 243 S.W. 2d 683 (1951); City of Galveston v. Hill, 151 Tex. 139, 246 S.W.2d 860 (1952). As between Guthrie and National Homes Corporation, the established law of agency is that as soon as Guthrie ratified the making of the note by Crow he became subject to all the obligations that pertain to the transaction in the same manner and to the same extent that he would be, had the act been done originally by him in person. Mechem, *Law of Agency*, "Ratification,"

§ 178; Restatement of the Law of Agency, Vol. 1, § 100; Gallup v. Liberty County, 57 Tex.Civ.App. 175, 122 S.W. 291 (1909) err. ref.; Hoffer v. Eastland Nat'l Bank, 169 S.W.2d 275 (Tex.Civ.App.1943) and copious authorities cited therein; Howth v. J. I. Case Threshing Machine Company, 280 S.W. 238 (Tex.Civ.App.1926) writ ref. in 116 Tex. 434, 293 S.W. 800. Inasmuch as no other defense was found in Guthrie's favor, the jury's finding that Guthrie ratified the making of the note not only conclusively established his liability on the note but also puts the parties to this case in proper focus as Maker and Payee. In a suit between the Maker of a note and the original Payee, it is established law in Texas that the original Payee is not a "holder in due course" and therefore is subject to every defense to which he would be subject if the note were nonnegotiable. Williams v. Jones, 122 Tex. 61, 52 S.W.2d 256 (Comm. Appeals, Sec. B, 1932) opinion adopted; Stetson v. First Nat'l. Bank, 44 S.W.2d 792 (Tex.Civ.App.1932) err. ref.; Article 5935, Sec. 58, Vernon's Ann.Civ. St. Since the Payee, National Homes Corporation, is subject to every defense available against a holder of a nonnegotiable instrument (which is no more than a simple contract), the majority's determination of the negotiability of the instrument is, in my opinion, unnecessary to the case because the rights of the parties are determined by contract law and not negotiable instrument law.

The only question left to be decided is the amount for which Guthrie is liable. The jury found that the note should be in the principal amount of $5,780.00; that such note had not been paid in full; and that $780.00 principal amount plus $168.31 interest remains unpaid on the note. In the absence of a statement of facts we cannot say that the judgment against Crow and Guthrie for the $780.00 plus the $168.31 was not authorized.

In Lane v. Fair Stores, Inc., 150 Tex. 566, 243 S.W.2d 683, 685 (1951), this Court

said: "In the absence of a statement of facts it must be presumed that sufficient evidence was introduced to support the findings of the jury and the judgment of the court. Schweizer v. Adcock, 145 Tex. 64, 194 S.W.2d 549 (1946)."

In City of Galveston v. Hill, 151 Tex. 139, 246 S.W.2d 860, 863(1), this Court said: "There being no statement of facts in the record we must presume that there was evidence to support the verdict of the jury and judgment of the court." (Citing authorities.)

The majority, however, has withdrawn this question from the jury's consideration and has held that as a matter of law the written words "Five Thousand Eighty and 00/100" are controlling. I cannot find an adequate basis for holding as a matter of law that typewritten words control over typewritten figures in a simple contract; the majority opinion doesn't afford an answer but merely says that the "reasons for the rule are sound," citing the rule applicable to negotiable instruments. The obvious basis for applying this rule to negotiable instruments is to aid the free flow of the instrument in commerce because to render a note negotiable the amount to be paid must be ascertainable from the face of the instrument. Furthermore, I do not believe that the four cases cited by the majority as authority for the rule that typewritten words control over typewritten figures will support such a rule.

The first case cited is State v. Collier, 160 Tenn. 403, 23 S.W.2d 897 (1930). In this case the State of Tennessee sued several defendants to collect delinquent state, county and city taxes. The defense to the action was that the statutes authorizing the collection of the taxes were unconstitutional because they were not read and passed on three different days in each house of the Legislature. The Senate Journal which recorded the history of these statutes was ambiguous in that the number of the bills did not conform to the description of the bills in all instances. In dictum the court

said, "This ambiguity *might* be resolved by the application of familiar rule of construction of written instruments that words prevail over figures where there is a conflict between" (emphasis added), but the court goes on to ground their holding not on contract law, but rather by deciding that the Legislative file number was not a legal or constitutional part of the statute and the passage of the statute had conformed to the requirements of the Tennessee Constitution.

The second case cited, and the only Texas case to be found on the subject, is Duvall v. Clark, 158 S.W.2d 565 (Tex.Civ.App., 1941) ref. w. o. m. In this case an interest coupon note for $900.00 had the figures "900.00" typed in the left-hand margin. The figures "900.00" had been stricken by running a mark through the same and a penciled notation of "930.00" was placed in the margin to the right of the "900.00" so stricken. No changes were made in the typewritten words that constituted the body of the note. In answering the maker's defense that this changing of the face of the note rendered it void in toto, the court said:

"It is elementary that the written words of an instrument control and prevail over figures. It is well settled that an alteration of an instrument, to have effect, must be a material one. In our opinion, the penciled alteration was a marginal memorandum that did not change the original legal effect of the instrument, and therefore it was not a material alteration."

It seems clear that the court was concerned here with an alteration and what effect should be given thereto. The facts of the case indicate that the opinion is not grounded on any rule establishing as a matter of law that the words in the instrument were controlling, but rather the court was trying to uphold the validity of the contract by determining that the handwritten figures did not *materially alter* the contract and thereby defeat its purpose. Furthermore,

I think my interpretation is borne out by the fact that the only case which I can find citing this case cites it for the proposition that:

"The alteration to a written instrument, to render it void, must affect the liability of the parties, and must materially change the instrument, causing it to fail to reflect the meaning and intent of the parties to the agreement." Associated Sawmills, Inc. v. Peterson, 366 S.W.2d 844, 848 (Tex.Civ.App., 1963) n. w. h.

Likewise, the remaining two cases cited, Wallace v. Cook, 190 Ky. 262, 227 S.W.2d 279 (1921) and Romine v. Haag, 178 S.W. 147 (Missouri Sup.Ct., 1915) do not rely on the rule laid down by the majority and in the latter case the court refers to the rule as an "inflexible rule" not applicable to the facts before them.

In reading these and other cases in other jurisdictions, my own conclusion is that the courts have confused this rule of negotiable instrument law which pertains to *written figures* and *written words* with the established rule of contract law that *written words* control over *printed words* and/or figures. There is sound basis for this latter rule in that the written or typed words are the immediate language of the parties themselves, whereas, the language of the printed form is intended for general use. See McMahon v. Christmann, 157 Tex. 403, 303 S.W.2d 341, 344 (1957). However, such a basis does not exist where *typewritten figures* conflict with *typewritten words* in a nonnegotiable instrument; a simple contract.

A written contract is no more, or less, than the integration in writing of terms already agreed on by the contracting parties. If the parties are in clear agreement as to the factual and legal result that they wish to accomplish and the scrivener captions the agreement with "$5780" in figures and inscribes in the body the words "Five Thousand Eighty and 00/100 Dollars," the contract is burdened with a conflict patent on the face of the instrument. Since the parties thought the instrument contained words and figures which it in fact did not contain, their mistake is one of fact and is a proper case for reformation to correctly express the true intentions of the parties. Under the majority opinion, however, it is a mistake of law and the defense of "mistake of fact" is foreclosed. Suppose for example that A borrows $50.00 from B and the note recites "$50.00" in figures and "Five Hundred Dollars" in the body of the instrument. Can it be said as a matter of law that A owes B $500.00? Surely our system of justice permits no such result; and this is so whether B was likewise mistaken or knew of the conflict and seeks to profit thereby.

Equity grants relief where, as a result of a mistake by the parties in an effort to reduce their agreement to writing, the subsequent contract does not express their real agreement, and this is exactly what has happened in this case. The jury found in answer to special issues that the note in question should be in the principal amount of $5,780.00 and in the absence of a statement of facts this Court is bound to assume that there was evidence to support these findings and the judgment entered by the trial court. See Root v. Hester, 309 S.W. 2d 480 (Tex.Civ.App., 1958) writ ref.; Kelley v. Ward, 94 Tex. 289, 60 S.W. 311 (1901); Miles v Martin, 159 Tex. 336, 321 S.W.2d 62 (1959).