The CHESSER COMPANY, Appellant,

v.

RIVERSIDE MOTORS, Inc., et al.,
Appellees.

No. 6139.

Court of Civil Appeals of Texas.

Beaumont.

Oct. 3, 1957.

Woodson E. Dryden, Beaumont, for appellant.

M. Herbert Oldham, Beaumont, for appellees.

ANDERSON, Justice.

■ The Chesser Company, successor to Chesser Motors, Inc., sued Riverside Motors, Inc., and W. D. Flowers for the balance alleged to be due on a promissory note one Ed Wortham made to Chesser Motors, Inc. The defendants were sued as endorsers of the note. They denied by sworn answer that they endorsed it. Riverside Motors, Inc., whose name did not appear on the note at any place, was not pursued at the trial. A jury found that defendant Flowers "did not endorse" the note, and judgment was rendered that the plaintiff take nothing.

The signature of defendant Flowers admittedly appeared on the back of the note, but Mr. Flowers represented that he had placed it there for another reason than that of becoming an endorser.

Appellant complains on appeal of the trial court's action in overruling the following: (1) Plaintiff's motion for instructed verdict, presented at the close of the evidence. (2) Plaintiff's objections to the court's charge, which objections were about the equivalent of a second motion for an instructed verdict. (3) Plaintiff's motion for judgment non obstante veredicto. (4) Plaintiff's motion for new trial.

Chesser Motors, Inc., payee in the note that is involved, was a finance or loan company which dealt in automobile notes and mortgages. In 1955 it advanced, for the use and benefit of Ed Wortham, a part of the purchase price of a used automobile Wortham purchased from Riverside Motors, Inc. To evidence and secure the loan, Wortham gave Chesser Motors, Inc., the note in suit and a chattel mortgage on the automobile.

The chance to make the loan was made available to Chesser Motors by a salesman for Riverside Motors, Inc., who sold automobiles on a commission basis. With Wortham as a prospective purchaser of an automobile, the salesman contacted Chesser Motors, Inc., to see if it would be interested in loaning Wortham part of the purchase price. In doing so, however, he appears to have acted in his own self-interest, and not as the representative of Riverside Motors, Inc. Chesser Motors, Inc., had previously agreed to pay him two per cent of any amount it loaned in such circumstances.

After one of its representatives had examined the automobile that was involved, and after getting a credit report on an Ed Wortham who was later discovered to have been the wrong Ed Wortham, Chesser Motors, Inc., agreed to make the loan. It then prepared the note and mortgage on its own printed forms and delivered the instruments to the automobile salesman, who was to have them signed by Wortham. The signed note and mortgage were subsequently delivered to Chesser Motors, Inc., and that company paid direct to Riverside Motors, Inc., the money due the latter.

At some stage of the proceedings prior to final delivery of the note to Chesser Motors, Inc., and payment of the money, appellee Flowers, who was president of Riverside Motors, Inc., signed his name on the back of the note. He signed at the top of the note, at a place where the name of the maker would ordinarily be typed or otherwise placed to aid identification of the note in a file, it being a note which was designed to be folded. The back of the note then read, "W. D. Flowers to Chesser Motors, Inc.," everything being in printing except Mr. Flowers' name. There was nothing above

the signature, which was itself above the word "to" and the printed name of Chesser Motors, Inc. Printed forms for endorsements, with lines for signature below them, were underneath the foregoing.

Mr. Flowers testified that he signed his name on the back of the note to identify the transaction and the seller of the automobile and to evidence the fact that Riverside Motors, Inc., had received its money. He denied that he signed as an endorser or with any intention of becoming liable on the note in any capacity.

There was no direct evidence to show that in making the loan Chesser Motors, Inc., required endorsers or that in paying over the money its representatives acted in the belief that appellee Flowers had signed as an endorser. And the evidence as a whole tended to establish circumstantially that the company's representatives understood that Mr. Flowers' signature on the note had no greater significance than that which Mr. Flowers ascribed to it by his testimony. Among the circumstances was the fact that after Wortham had defaulted on the note and had left the automobile on the premises of Riverside Motors, Inc., the plaintiff had the automobile towed away and then sold it at private sale, without notice to Riverside or to appellee Flowers.

Appellant appears to have brought and prosecuted its suit in the belief that merely because Mr. Flowers' signature appears on the back of the note unaccompanied by words explaining it, the Negotiable Instruments Act (Art. 5932, et seq., Vernon's Ann. Civ.Stat.) renders Mr. Flowers liable, irrespective of the true circumstances in which he signed his name and of the reasons which prompted him to do so. Appellant refers us to subsection 6, Section 17, of Article 5932 and to Sections 63 and 64 of Article 5936, which, in the order indicated, are as follows:

"6. Where a signature is so placed upon the instrument that it is not clear in what capacity the person making the same in-

tended to sign he is to be deemed an indorser."

"Sec. 63. A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor, is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity."

"Sec. 64. Where a person, not otherwise a party to an instrument, places thereon his signature in blank before delivery he is liable as an indorser, in accordance with the following rules:

"1. If the instrument is payable to the order of a third person, he is liable to the payee and to all subsequent parties."

In the circumstances of the particular case, the quoted provisions of the Act do not, in our opinion, affect the rights of the parties. The controversy is not with reference to whether appellee Flowers is liable on the note in some capacity other than that of an endorser. Nor is it with reference to whether appellant's status as payee in the note or as successor to the payee precludes it from recovering. It is solely with reference to whether, as between himself and the payee named in the note, appellee ever became bound as endorser. And we think this is a question which must be resolved on general principles of contract law.

It follows, of course, that if appellee Flowers signed his name on the back of the note for the reasons and for only the purposes he said he did, and this was known to Chesser Motors, Inc., at the time it paid over the money, appellee did not become an endorser.

The situation might be different if appellant were "a holder in due course" within contemplation of the Act, but it is not. As successor to Chesser Motors, Inc., it occupies the same position that company occupied. And, since Chesser Motors, Inc., was named in the note as payee and was the only holder of the note until appellant came on the scene, Chesser

Motors, Inc., was not itself "a holder in due course." Howth v. J. I. Case Threshing Mach. Co., Tex.Civ.App., 280 S.W. 238, writ of error denied (J. I. Case Threshing Mach. Co. v. Howth) 116 Tex. 434, 293 S.W. 800; Kimball-Krough Pump Co. v. Judd, Tex.Civ.App., 88 S.W.2d 579; 6 Tex.Jur., Bills and Notes, sec. 86, p. 695.

It is perhaps unnecessary to do so, but we nevertheless call attention to Section 58 of Article 5935, Vernon's Ann.Civ.Stat., which is as follows:

"In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable."

Appellant's points of error are all overruled and the judgment of the trial court is affirmed.